I3N3ESPC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                        18 CR 0014 (VM)

VINCENT ESPOSITO, STEVEN
ARENA, FRANK GIOVINCO, FRANK
COGNETTA, VINCENT D'ACUNTO,
JR.,

                Defendants.

------------------------------x

                                          New York, N.Y.
                                          March 23, 2018
                                          3:00 p.m.


Before:

                    HON. VICTOR MARRERO,

                                          District Judge


                        APPEARANCES

GEOFFREY S. BERMAN
     Interim United States Attorney for the
     Southern District of New York
JASON M. SWERGOLD
KIMBERLY J. RAVENER
     Assistant United States Attorneys


LAW OFFICES OF JEFFREY LICHTMAN
     Attorneys for Defendant Esposito
JEFFREY H. LICHTMAN
JEFFREY B. EINHORN
          -and-
ELIZABETH E. MACEDONIO
     Attorney for Defendant Esposito

STRAZZULLO LAW FIRM P.C.
     Attorneys for Defendant Arena
SALVATORE E. STRAZZULLO

I3N3ESPC

Appearances (Continued)

JAMES R. FROCCARO, JR.
     Attorney for Defendant Giovinco

RUBINSTEIN & COROZZO, LLP
     Attorneys for Defendant Cognetta
JOSEPH R. COROZZO

GOLDSTEIN & HANDWERKER, LLP
     Attorneys for Defendant D'Acunto
BY:  MICHAEL HANDWERKER

I3N3ESPC

```
1              THE COURT:  Good afternoon.  This is a proceeding in

2    the matter of United States v. Esposito and others.  It is

3    docket no. 18 CR 0014.

4              Counsel, please enter your appearances for the record.

5              MR. SWERGOLD:  Good afternoon, your Honor.  Jason

6    Swergold and Kim Ravener for the government.

7              THE COURT:  Good afternoon.

8              MR. LICHTMAN:  Good afternoon, your Honor.  Jeffrey

9    Lichtman, Jeffrey Einhorn, and Elizabeth Macedonio for Vincent

10   Esposito.

11             MR. STRAZZULLO:  Salvatore Strazzullo on behalf of

12   Mr. Arena.

13             MR. HANDWERKER:  Michael Handwerker, Goldstein &

14   Handwerker on behalf of Mr. D'Acunto Junior.

15             MR. FROCCARO:  James Froccaro for Frank Giovinco who

16   is seated right there.

17             MR. COROZZO:  On behalf of Frank Cognetta, Joseph

18   Corozzo.  Mr. Cognetta is in the audience also.

19             THE COURT:  The Court notes for the record that

20   Mr. Esposito is present in the courtroom as well seated next to

21   his attorneys.

22             The Court has before it the government's request for

23   review of the decision by the magistrate judge to provide

24   Mr. Esposito a bail package, and let's put that aside for the

25   moment.  I have received the various submissions that the
```

I3N3ESPC

1      parties have filed in that connection, and will address it in a

2      moment.

3              The main purpose that I scheduled this conference is

4      to talk about setting a trial date at the earliest possible

5      opportunity.  And by the earliest possible opportunity, I'm

6      talking about a short period of anywhere between three to six

7      months from now.

8              Before we talk about specifics, let's ask the

9      government how long a trial would the government contemplate.

10             MR. SWERGOLD:  Your Honor, I think there's a couple of

11     issues to address with respect to setting a trial date.  I

12     think a trial at this point, especially with all defendants,

13     would be at least three weeks, and probably much longer.

14             THE COURT:  That's encouraging for me for my schedule.

15             MR. SWERGOLD:  There's also a significant amount of

16     discovery that was produced in this case, but even more

17     discovery that we're still getting ready to produce.  I don't

18     know if your Honor wants us to at least talk to defense

19     counsel.  I heard some rumblings, and I know from our

20     perspective, too, I don't know if anybody would be ready to try

21     this case in three to six months from now.

22             THE COURT:  All right.  I heard you.

23             MR. LICHTMAN:  Judge, I'm happy to chime in.

24             THE COURT:  Mr. Lichtman.

25             MR. LICHTMAN:  If I can.  As the prosecutor said,

I3N3ESPC

1      there's also a lot of outstanding discovery, but what has been

2      produced is 54 hours of consensual recordings and 72 hours of

3      Title IIIs.  So we've got about 127 hours of tapes, of which

4      there is a protective order that's presently in place.  And the

5      defendants are not allowed to review any of these tapes without

6      the presence of counsel.

7              So, at least with Mr. Esposito, who is still in the

8      MCC, if we had a paralegal go even six hours a week to spend it

9      with Mr. Esposito, that's going to be over 20 weeks just to

10     listen to the tapes a single time, forget reviewing them and

11     carefully going over them.

12             So, as much as I, especially with a client who is in

13     presently, I'd love the idea of a trial tomorrow if I could.

14     With 127 hours of tapes, of which he's yet to hear a single

15     minute of it, I don't think that a trial in that short period

16     that your Honor noted is theoretically possible.

17             THE COURT:  Let's assume, I indicated three to six

18     months.  What if we pushed towards the latter part, rather than

19     the shorter part.

20             MR. LICHTMAN:  Your Honor, I'm sorry?

21             THE COURT:  In other words, if we considered the

22     latter part, which is closer to the six months, rather than to

23     the three months.  Would that make things more achievable for

24     you?

25             MR. LICHTMAN:  I think it is still tough with so many

I3N3ESPC

1   hours of tapes, especially since --

2              THE COURT:  Tough is not impossible.

3              MR. LICHTMAN:  Nothing is impossible, Judge.  If you

4   give us a trial date, we'll be ready.

5              THE COURT:  I'm going to give you a trial date, but I

6   want to hear what your thoughts are.

7              MR. LICHTMAN:  This is a very heavy tape intensive

8   case for any defense lawyer.  So it is not like this is an

9   average case.  This is very, very heavy.  So normally I would

10  expect a little more time, especially since they're not even

11  allowed to have the tapes by themselves.  Obviously, we are

12  going to go over that with your Honor now if we can, once we're

13  done with this part of it.

14              It seems a little bit difficult and unwieldy that the

15  only way they can even review the tapes is in the presence of

16  counsel.  And we obviously all have other cases and other work.

17  I've got trials scheduled for the next year.

18              THE COURT:  What you just said assumes that

19  Mr. Esposito would need to see the tapes at the MCC.  But what

20  if he were out?

21              MR. LICHTMAN:  If he was out, the protective order

22  still does not permit him to have the 127 hours of tapes.  He

23  can't listen to them in his home.  He would have to either come

24  to our office or we'd have to go to his home to listen to the

25  tapes.

I3N3ESPC

1          THE COURT:  Is that impossible?

2          MR. LICHTMAN:  It is not impossible.  Obviously, the

3    first thing I would ask if your Honor were setting a trial date

4    is the protective order be modified to allow him to work on the

5    tapes not in our presence.

6          THE COURT:  All right.  Understood.

7          MR. LICHTMAN:  That would speak --

8          THE COURT:  It is not an impossibility.

9          MR. LICHTMAN:  No.

10          MR. COROZZO:  Your Honor, if I might.

11          THE COURT:  Yes.

12          MR. COROZZO:  It seems at this point that six months

13    might not be unreasonable, but the defense is unaware of what

14    the outstanding discovery entails.

15          THE COURT:  Let's put that aside for the moment.  You

16    are saying from your client's perspective six months is not

17    impossible.

18          MR. COROZZO:  It is not impossible, depending upon

19    what is the outstanding discovery.  Now there seems to be

20    significant discovery that has not yet been turned over.  If

21    that includes recordings, electronic monitoring, then the six

22    months might be impossible.

23          So it is very hard for the defendants to give a true

24    opinion without knowing what is still to be turned over.

25    That's also assuming that there is no intentions or plans of

1    superseding the indictment.  And then we can give a more

2    sincere opinion to the Court.

3              THE COURT:  All right.  Thank you.  Anyone else?

4              MR. STRAZZULLO:  On behalf of Mr. Arena, looking at

5    the discovery provided already by the government, a September

6    trial date would be fine for Mr. Arena.  Thank you, your Honor.

7              THE COURT:  Anyone else wishes to weigh in on this?

8              MR. FROCCARO:  I happen to agree with Mr. Corozzo.  I

9    think until we have all the discovery, then we'll be in a

10   better position to estimate how much time we need.  Once we get

11   it, I'm sure we can report to your Honor whether six months

12   would be adequate or not.

13             THE COURT:  Mr. Swergold.  Anyone else on the defense?

14             MR. LICHTMAN:  One last thing.  Beyond the 127 hours

15   of tape, there is also 78,000 text messages which means there

16   are 78,000 pages that need to be reviewed.

17             I don't have a problem with fast tracking the case,

18   your Honor obviously wants to get this thing over with and I

19   certainly appreciate that.  I think that before we can do it

20   though, we need to receive all the discovery, see what our

21   motions are going to be, perhaps set a motion schedule, and

22   then at that point perhaps have a conference and set a

23   realistic trial date.

24             I don't know how long these motions will be.  We

25   haven't received the applications and affidavits for the Title

I3N3ESPC

1    IIIs.  There is so much outstanding discovery, we're really

2    hunting in the dark, so to speak.

3            MR. HANDWERKER:  Judge, if I may.  You set a

4    conference date in this matter for May 18 for a control date.

5    I think that date should still be viable.  We can report to

6    your Honor how we're getting discovery.  If we need more time,

7    we can request it, and we have better control over the case.

8    As it stands now, we're at a disadvantage because we don't know

9    what they have.

10           THE COURT:  Thank you.

11           MR. FROCCARO:  Just the last thing, the last

12   disadvantage is we're at, I don't know what my client is really

13   charged with.  We need some particulars.  He's charged in a

14   RICO conspiracy, and I don't know which racketeering acts they

15   are claiming he personally agreed with and committed.  That

16   would be helpful, especially in terms of looking at the

17   discovery so I know what crime they are alleging he committed

18   in furtherance of this conspiracy.

19           THE COURT:  Mr. Swergold, back to you.

20           MR. SWERGOLD:  Yes, your Honor.  I can certainly give

21   a preview now of the remaining discovery we have that we are

22   preparing to produce.  It does include the Title III

23   affidavits, there's e-mail accounts for at least two, for two

24   of the defendants.  There are phone search and computer search

25   warrants from the search that was executed at Mr. Esposito's

I3N3ESPC

1  house, and the union office.  There is the hard copy documents

2  we have to get scanned in, that's going to be thousands of

3  pages from the search warrant that was also done at, again, at

4  Mr. Esposito's house and at the union office.  We have subpoena

5  returns, bank records, union records, and also voluminous

6  records on the financial transactions that are the basis for

7  most of the counts in the indictment, the honest services fraud

8  and the wire fraud counts.

9        And, your Honor, what we produced to the defense in

10  the first instance was a significant amount of material.  I

11  think Mr. Lichtman really hit it on the head with how much

12  material is in just the consensual recordings and wiretaps

13  alone.  As well as surveillance photographs, and some search

14  warrant reports, line sheets.  So we gave them, we gave them

15  the stuff that really usually defense lawyers want to hear.

16  They want to hear their guys on tape right away, so we gave

17  them all of that, and it is a lot for them to review, which is

18  why at the first conference in January we set the May

19  conference to give everybody a chance to really start digging

20  into the discovery.

21        We're getting ready to get all of this stuff out, I

22  would say probably within a week or two weeks, max.  And that's

23  going to add, it is really going to be a lot of additional

24  stuff for them to review.  It will be the basis, if they wanted

25  to file motions, there is going to be things in there that will

I3N3ESPC

1    be the basis for motions they have to review first.

2            If your Honor is set on setting a trial date this

3    year, perhaps maybe just a little bit past six months, closer

4    to the end of the year would be better, because six months from

5    now is September, and I don't think -- I think a more feasible

6    date might be towards the end of the year.

7            THE COURT:  Thank you.  I'm going to set the trial

8    date September 9.  I'm sorry, September 10 which is a Monday.

9            MR. EINHORN:  If I can interject.  I have a prebooked

10   nonrefundable vacation during that week in September.  Is there

11   any way to have it two weeks later?  I try to put things very

12   far in advance, so we don't have issues with trial.  I thought

13   six or seven months in advance would leave us that ability.

14           THE COURT:  The question is how many attorneys does

15   Mr. Esposito need to have for the purposes of this trial?

16           MR. EINHORN:  I've been working nonstop day and night,

17   so I think my absence from this team would be -- I am the

18   principal author of a lot of stuff that's gone in at this

19   point, together with Mr. Lichtman.

20           THE COURT:  September 24.

21           MR. SWERGOLD:  Your Honor, I also just want to make

22   one additional point clear.  Even though we are going to get

23   all the other discovery out in the next coming weeks, the

24   government, as we always do, will continue to investigate this

25   case and any additional leads we have.  So if we get more

1    evidence as we get closer and closer to trial, we'll keep

2    producing it on a rolling basis.  There is a possibility and a

3    very good possibility that more evidence will come to light and

4    more discovery will be generated in the months leading up to

5    trial.

6              THE COURT:  That's the case any time a Court sets a

7    trial.

8              MR. SWERGOLD:  Agreed, your Honor.  I wanted it clear

9    on the record.

10              THE COURT:  Understood.

11              Now, on the basis that the matter is going to trial in

12    a period of roughly six months, the Court will grant the

13    application of the government, but set the conditions of bail

14    for Mr. Esposito to be those set forth in the proposal of the

15    government for an armed guard for the period up to trial.

16              Now, Mr. Lichtman, I understand your concern and the

17    numbers that you submitted.  But, under the assumption that the

18    trial is going to be in the time frame that we're talking

19    about, the costs that you submitted, which I assume were

20    annualized costs, would be half of that.

21              The difference between the six months of the armed

22    guard and what you assumed to be the costs of a yearly expense

23    of camera and video and people reviewing those videos on an

24    ongoing basis is probably not materially different.

25              MR. LICHTMAN:  Well, Judge, the trial starts in six

I3N3ESPC

1    months.  Trial doesn't end in six months.

2            THE COURT:  Well, the government said a trial of about

3    three weeks.  So I am assuming a trial of about three weeks.

4            MR. LICHTMAN:  I think they said three weeks, perhaps

5    much longer.

6            THE COURT:  We'll start with a period of three weeks.

7            MR. LICHTMAN:  Well, Judge, if that's your order,

8    that's your order.  We are going to be appealing to the Second

9    Circuit.  We'll do that forthwith.

10            THE COURT:  All right.

11            MR. LICHTMAN:  So but I would also ask with the

12    conditions in place, either pursuant to your order or while he

13    sits in the MCC, that the protective order be modified to allow

14    him to review these tapes on his own without counsel present.

15    Otherwise, this becomes completely unworkable.  We'll have to

16    hire a team of lawyers that will be dedicated just for this

17    case, who will have to sit with Mr. Esposito daily to prepare

18    for trial in six months with 127 hours of wiretaps,

19    consensuals, 78,000 texts.  All of this falls under the

20    protective order.

21            THE COURT:  Mr. Swergold.

22            MR. SWERGOLD:  Yes, your Honor.  Actually, counsel for

23    Mr. Giovinco also raised with the government recently the

24    proposal to modify the protective order and I think we are

25    going to be doing that.

I3N3ESPC

1          With respect to the wiretaps and the text messages

2     that are in the wiretaps, we would be fine with modifying the

3     protective order, and we can get the Court a revised version to

4     allow for that to be reviewed by defendants outside the

5     presence of defense counsel.

6          But for the consensual recordings that include

7     cooperating witnesses on the recordings, we would continue

8     to -- we would object and we would not agree to allow those

9     recordings to come from outside of the protective order.

10    That's the classic example of the types of discovery that are

11    subject to a protective order like this.

12          THE COURT:  Mr. Lichtman.

13          MR. LICHTMAN:  Judge, this is a case that's going to

14    be going to trial in six months.  We have 54 hours of

15    consensuals.  There are no secrets as to who the cooperators

16    are who are on the tapes.  The cooperator that was mentioned

17    during the bail hearing is out and about going to work every

18    day with apparently no concerns.

19          So with all respect, with a case where there is no

20    allegations of obstruction against Mr. Esposito, or perhaps any

21    of the defendants in this case, to make it even more onerous

22    and have 54 hours of tapes in which we'll have to have someone

23    with Mr. Esposito, there is no basis for it.

24          And if we are going to be forced to get ready for

25    trial in six months, and we will be ready, Judge, despite the

I3N3ESPC

1    appeal on the bail, there has got to be some ability for us to

2    be able to do our job within our Constitutional obligations,

3    and 54 hours of consensual tapes that are very difficult to

4    hear as it is, Judge.  These aren't Title IIIs that are crisp

5    taken right from a phone.  These are tapes where it is

6    difficult to get a word out of.

7              So the idea that 54 hours can be listened to and

8    prepared in 54 hours, it could be 500 hours in order to be able

9    to understand what's actually on these consensuals, it is just

10   not realistic with the short trial date.

11             THE COURT:  Mr. Swergold, do these tapes have

12   transcripts along with them or are they just pure tapes?

13             MR. SWERGOLD:  Your Honor, obviously we are going to

14   now start preparing transcripts for the recordings, especially

15   ones that we intend to use at trial.  I know that the

16   consensual recordings, I don't think have transcripts.

17             MR. LICHTMAN:  They don't.

18             MR. SWERGOLD:  The wiretap obviously has line sheets

19   that set out a rough transcript of what took place over the

20   call.

21             But just also to address one point raised by

22   Mr. Lichtman.  It is basically always the case that when you

23   produce a consensual recording, the identity of the people who

24   are doing the recording, if it's the defendant and somebody

25   else, for example, they are going to know who the cooperator

I3N3ESPC

1    is.  That doesn't change the fact that those types of

2    recordings are still subject to protective orders, and we

3    would, again, we continue to object to the idea that the

4    consensual recordings made by cooperating witnesses should be

5    allowed to be in the defendants' possession without the

6    presence of counsel.

7          The wiretap recordings, which is more than the

8    consensual recordings, we are fine with relaxing the protective

9    order with respect to those recordings.

10          MR. LICHTMAN:  Judge, there is a protective order in

11   place, but for what purpose?  The defendant knows who is on

12   tapes, it is his voice talking to other individuals.  He

13   understands that he is not allowed to disseminate the tapes.

14   If he disseminates the tapes, there is going to be a problem,

15   especially with your Honor's order for bail.  If we lose our

16   appeal or if we win our appeal, either way, he is allowed to be

17   out.  He's bailed.  He is either going to have guards or not

18   have guards.  If any of these tapes are disseminated to a third

19   party, he goes back to the MCC.

20          What concern is theirs that they can have the Title

21   IIIs but they can't have the consensuals?  Are they suggesting

22   that there are no cooperators that are captured on the Title

23   IIIs?  This is just a fiction.

24          We don't have a problem with the protective order, he

25   is not allowed to disseminate to third parties.  He understands

17

I3N3ESPC

 1   your Honor will put him right back in.

 2            We've got a six-month trial date from now.  They

 3   haven't turned over half of the discovery perhaps, and now we

 4   are being told that we have to hire a team of people that will

 5   have to visit him at his house because he has armed guards, or

 6   are the armed guards allowed to come to our office with him to

 7   see the lawyers or do we have to go to his house?

 8            Are we going to have to hire a new team of people

 9   whose sole job will be to go over 54 hours of tapes with him?

10            I don't see, without any kind of showing as to why

11   Mr. Esposito or any of these defendants are somehow at risk of

12   disseminating these tapes to third parties, presumably that's

13   what the concern is.  They'll take these tapes and they'll hand

14   them out to their criminal confederates.  What basis is there

15   in this case that these defendants are capable of such a thing

16   or have any desire to do that?

17            They are all out on bail and Mr. Esposito is bailable.

18   Why would they do it?

19            THE COURT:  Thank you.

20            Mr. Swergold, I would suggest that you sit down with

21   Mr. Lichtman and his team and see whether you can work out a

22   stipulation concerning amendments of the protective order that

23   addresses your concern as well as the interests of the

24   defendants under these circumstances.  And these circumstances

25   I'm referring to the point that Mr. Lichtman makes, which I

I3N3ESPC

1    think is not unreasonable, that if the identity of the

2    cooperator is known and there is no other witness or cooperator

3    whose safety and security may be threatened, that those may be

4    grounds for reasonable relaxation of the protective order.

5         At the same time, given that I am granting the bail

6    package on the terms that we talked about of the armed guard,

7    the parties should sit down again and develop an appropriate

8    order that incorporates the ruling on that basis.

9         Anything else?

10        MR. FROCCARO:  Judge, would it be possible to set a

11   schedule for us to get the enterprise letter from the

12   government so I have a clue what my client, what racketeering

13   acts they claim he's involved with?

14        THE COURT:  Mr. Swergold.

15        MR. SWERGOLD:  Your Honor, as is typical in

16   racketeering cases, the government usually prepares an

17   enterprise letter around the time that it files its motions in

18   limine.  It also serves to put defendants on 404(b) notice, and

19   is also part usually of a 404(b) motion in limine.

20        So, we can certainly provide a letter to the Court

21   where there are numerous courts in this district and the Second

22   Circuit that has approved providing an enterprise letter closer

23   in time to trial, at around the time motions in limine are

24   filed, and that would be the government's plan in this case as

25   well.  There is nothing extraordinary about this case that

I3N3ESPC

1    makes it any different than the normal racketeering cases that

2    we try in this district.

3         MR. FROCCARO:  Judge, I just disagree.  That's simply

4    not accurate.  I've worked on a number of cases where judges

5    order early on so the defense can prepare.  How can I even

6    prepare against the charges if I don't know what they are.

7         I'll give you an example.  the case before Judge

8    Sullivan recently.  Judge Sullivan didn't do it with the in

9    limine motions.  He did it very early on in the proceedings,

10   I'd say at the midway point in the proceedings.

11        That's simply not accurate.  How can I defend against

12   a charge if I don't know what it is.  they should know what

13   those acts are.  They presented it to the grand jury and they

14   got an indictment returned.  So I am not asking for much.

15        MR. SWERGOLD:  Your Honor, first of all, the case

16   before Judge Sullivan was a 40-plus defendant case with

17   numerous charges.  That's totally different.

18        If Mr. Froccaro wants to know what his client did, he

19   can ask his client.  We've already detailed some of the acts

20   that took place here in the bail arguments.  We had a

21   eight-defendant gang case that ultimately went down to less

22   than eight defendants because several of them pled before Judge

23   Failla where we did the enterprise letter about a month to a

24   month and a half before trial.

25        And your Honor, I think at this point it is certainly

I3N3ESPC

1    too early to set that.  If your Honor will set a motion in

2    limine schedule closer to trial, we would suggest setting the

3    enterprise letter around that time as well.  That's standard.

4         The case cited by Mr. Froccaro is a complete outlier

5    given how many defendants, how many acts were alleged in that

6    case.  It is completely different than this case.

7         MR. FROCCARO:  Judge --

8         MR. LICHTMAN:  Your Honor --

9         MR. FROCCARO:  Please, Judge.  Courts routinely give

10   you that information in connection with the substantive

11   motions, bill of particulars.  For them to suggest it is in a

12   in limine motion is just flatout wrong.  This is not a case

13   where a client may be charged with a bunch of substantive

14   crimes, which are included in the racketeering charge.

15        My client is just charged with a racketeering

16   conspiracy.  I have no clue what he is charged with.  And if he

17   wants me to ask my client, the answer is he pled not guilty.  I

18   need that assistance from the Court so that I can make

19   meaningful time, put meaningful time to go through the

20   discovery here, Judge.

21        MR. LICHTMAN:  May I briefly?

22        THE COURT:  Let me address this issue.  I think

23   perhaps the way to flush it out is for you to make a request

24   for a bill of particulars, and the Court will rule on that.

25        MR. FROCCARO:  Understood.  I've made an informal one

I3N3ESPC

1    of the government already, and now I'll make a formal one.

2              MR. LICHTMAN:  We put a request for a bill of

3    particulars yesterday.

4              All I would add is we have a trial in six months,

5    we've got a huge amount of discovery to go through.  They know

6    what they believe the defendants did.  The indictment, our

7    client is charged with a racketeering conspiracy where it says

8    the members of the enterprise are engaged in extortion, loan

9    sharking, gambling, robbery, narcotics trafficking, assaults,

10   murder, unlawful payments, honest services fraud, and other

11   crimes.  There is no reason to hide the ball.  They know what

12   the evidence is, what they plan on proving to a jury.  Why

13   can't we know too?

14             THE COURT:  All right.  Anything else?  Government?

15             MR. SWERGOLD:  No, not from the government.

16             THE COURT:  In that case why don't we get back to the

17   schedule that the court set for trial.  And speedy trial

18   implications.

19             Mr. Swergold, does the government move for exclusion

20   of time?

21             MR. SWERGOLD:  Yes, your Honor.  The government would

22   move to exclude time under the Speedy Trial Act between today

23   and September 24, 2018, so that the defendants can continue to

24   review discovery, can prepare any motions, and the parties can

25   prepare for trial.

I3N3ESPC

1          MR. LICHTMAN:  Judge, if I may clarify one thing

2     regarding the bail.  As the order stands now, your Honor had

3     ordered the guards to be present at Mr. Esposito's home.  Would

4     that permit him, based on that issue, to bring those guards to

5     our office and meet with us there?

6          THE COURT:  I don't see why not.  But, Mr. Swergold,

7     does the government have a view on this?

8          MR. SWERGOLD:  No, I think that's right, your Honor.

9     Under home incarceration, the only time that a defendant can

10    leave the home is for a medical emergency, to go to court, or

11    to see his lawyer.  So, yes, we would expect that the armed

12    guards would be -- that company as part of the services would

13    be responsible for bringing him to meet with his lawyer or to

14    court, and then bringing him back.  If the armed guards were to

15    just stay at the home and he could leave and be outside of

16    their supervision, it would defeat the purpose.

17         MR. LICHTMAN:  I don't think that's what I was

18    referring to.  I thought we would not be able to have

19    Mr. Esposito come to our offices under those conditions.

20         THE COURT:  No, that's not the intent.

21         MR. LICHTMAN:  Thank you.

22         THE COURT:  On the government's motion to exclude

23    adjourned time from speedy trial calculations from today

24    through the trial date of September 24, any objections recorded

25    by any defendant?

I3N3ESPC

1        MR. LICHTMAN:  No, your Honor.

2        THE COURT:  Hearing none, the motion is granted.  I

3   find that the reasons conveyed to the Court warrant exclusion

4   of time as it is intended to ensure the effectiveness of

5   counsel and to prevent any miscarriage of justice.  The Court

6   is satisfied that the ends of justice served by the granting of

7   this continuance outweigh the best interests of the public and

8   the defendants in a speedy trial.  This order of exclusion of

9   time is entered pursuant to the provisions of the Speedy Trial

10  Act, Title 18 U.S.C. Sections 3161(h)(7)(B)(ii) and (iv).

11       If there is nothing else, I thank you.  Have a good

12  day.

13       MR. LICHTMAN:  Thank you, your Honor.

14

15       THE COURT:  Just one more point.  We do have on the

16  calendar a status conference in May.  I think it would be

17  important for us to keep that date to touch base to see where

18  we are on the various issues.

19       MR. LICHTMAN:  Thank you.

20       (Adjourned)

21

22

23

24

25