UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>FRANK GIOVINCO,<br><br>Defendant. |

18-cr-14 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J

On December 3, 2019, defendant Frank Giovinco was convicted at trial of racketeering conspiracy in violation of 18 U.S.C. § 1962(d) and extortion conspiracy in violation of 18 U.S.C. 1951(a). The jury unanimously found that the defendant agreed with others, including Vincent Esposito, Steven Arena, Frank Cognetta, and others, to participate in a pattern of racketeering offenses on behalf of the Genovese Crime Family of La Cosa Nostra (the "Genovese Crime Family"), including multiple acts of extortion and fraud. The defendant now moves for a new trial pursuant to Federal Rule of Criminal Procedure 33 on two grounds. First, he argues that a number of the Court's purportedly erroneous evidentiary rulings justify a new trial. Second, he argues that the weight of the evidence was against his conviction. For the reasons below, neither argument is persuasive and the Rule 33 motion is denied.

I. Rule 33 Standard

1

Federal Rule of Criminal Procedure 33 states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. However, because it owes deference to the jury's findings, see United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992), the Court "must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (citing Sanchez, 969 F.2d at 1414). To prevail on a Rule 33 motion, the burden is on the defense to show that "letting [the] guilty verdict stand would be a manifest injustice." Ferguson, 246 F.3d at 134.

## II. Evidentiary Rulings

The defendant first moves for a new trial on the ground that the Court erred in a number of its evidentiary rulings. The Court first erred, according to Giovinco, by permitting Special Agent John Carillo to testify. Second, the Court erred by precluding cross examination of (1) a cooperating witness ("CW-3") regarding his history of mental health conditions; (2) Vincent Fyfe regarding his alleged extra-martial affairs; and (3) Clifford Moss regarding certain transactions with the estate of a former client.

### a. Special Agent John Carillo's Testimony

Giovinco argues that the Court erred by permitting government witness Special Agent John Carillo to testify as an organized crime expert. The defendant's motion to preclude this testimony was

2

denied by Judge Marrero before the case was transferred to the undersigned. See Decision and Order, ECF No. 224. This Court, however, adopted Judge Marrero's decision. Transcript of Record ("Tr.") at 3. As Judge Marrero explained in denying the defense's motion in limine to preclude Carillo's testimony, the Second Circuit has repeatedly made clear that the testimony of a Government witness as an expert on organized crime is admissible. See United States v. Matera, 489 F.3d 115, 121-22 (2d Cir. 2007) (listing cases in which "this circuit has approved the admission of expert testimony in organized crime cases 'to help explain the operation, structure, membership, and terminology of organized crime families'"). Carillo's testimony, which included discussion of the structure, history, purpose, and union involvement of organized crime families such as the Genovese family, constituted just this kind of permissible testimony. See Tr. at 34-76.

Giovinco argues that, notwithstanding this precedent, Carillo's testimony was impermissible because he failed to "provide any historical, narrative or reputation evidence (expert testimony) regarding Mr. Giovinco specifically." Mem. of Points and Authorities in Support of D's Motion at 9 ("D's Rule 33 Mem."), ECF No. 345. Carillo's failure to testify to the specifics of the defendant's crime, however, was exactly what made his testimony permissible. The Second Circuit has held that while it is permissible for the Government to call experts to testify in

3

general terms about organized crime groups and their modes of operation, the Government "cannot satisfy its burden of proof by taking the easy route of calling an 'expert' whose expertise happens to be the defendant." United States v. Mejia, 545 F.3d 179, 191 (2d Cir. 2008). Accordingly, Carillo's testimony was permissible for its very generality, and the Court did not err by allowing it.

b. Cross Examination of CW-3 Regarding His Mental Health History

Giovinco next argues that the Court erroneously precluded defense counsel from cross examining Government witness CW-3 on his mental health. CW-3 testified, inter alia, about an incriminating conversation he had with Giovinco while they were incarcerated together. While imprisoned, CW-3 attempted to commit suicide, was removed from an anger management program for medical or psychiatric reasons, and was prescribed an antidepressant. Defense counsel argues that these conditions may have impacted the accuracy of CW-3's recollection and interpretation of events during this time, and that cross examination of CW-3 about his mental health history was necessary for the jury to fully assess CW-3's credibility.

Although evidence of a witness's psychological history may be admissible when it goes to his credibility, it should be excluded when the probative value of the evidence is outweighed by its potential for unfair prejudice under Rule 403. In order to

4

determine the probative value of the evidence, the court should consider factors such as the nature of the psychological problem, how recent the history is, and whether the problem may have affected the witness's ability to perceive or recall the events of the testimony. United States v. Sasso, 59 F.3d 341, 347-48 (2d Cir. 1995). In this case, the probative value of cross-examining CW-3 on his mental health history would have been minimal at best. Defense counsel has provided no reason to believe that CW-3's depression had any impact on his ability to accurately perceive or recall his conversations with Giovinco or otherwise bore on CW-3's credibility. Thus, the Court properly excluded cross examination on this subject pursuant to Rule 403.

This conclusion is also supported by the decisions of two other courts in this district that precluded cross examination of CW-3 on his mental health history in other trials. ECF No. 292-1, Exh. B (transcript excerpts of United States v. Londonio, No. 17-cr-89 at 46 (finding no "basis for concluding that depression or anxiety impact your ability to perceive, even if these conditions were in place during the time frame of the matters about which the witnesses are going to testify")); ECF No. 292-1, Exh. A (transcript excerpts of United States v. Castelle, No. 18-cr-15 at 13 (holding that "depression of [CW-3] or other psychological infirmities are not relevant for cross-examination")).

5

c. <u>Cross Examination of Vincent Fyfe Regarding His Purported Extramarital Affairs</u>

Giovinco next asserts that the Court "erroneously precluded Defense Counsel from cross-examining Vincent Fyfe on his extra-marital affairs." D's Rule 33 Mem. at 12. The Court, however, never precluded such cross examination because defense counsel never affirmatively sought to undertake such cross examination. Rather, the Court "preclude[d] evidence of <u>CW-2's</u> extramarital affairs" based on a Government motion in limine requesting as much. Tr. at 4 (emphasis added). The Court believed CW-2 to be Clifford Moss, not Vincent Fyfe, and it is clear from both the Government's briefing on the motion in limine and defendant's responsive briefing that both parties were under the same impression.

For example, the Government referred to CW-2 as a "financial advisor" who "sold certain annuity investment products to the Union," characteristics that only describe Clifford Moss. ECF No. 292 at 1. In response to the Government's motion on this point, Giovinco stated that "CW-2 is expected to testify as to his role in the financial fraud/extortion that several members of the Genovese Crime Family participated in. CW-2 is a central figure to those allegations as a former financial professional." ECF No. 299 at 3. Because the Court never precluded cross examination of Vincent Fyfe on his extramarital affairs, it could not have erred in this regard.

6

Moreover, even if, contrary to fact, the Court had precluded such cross examination, such a ruling would have been appropriate. Evidence of an affair is not particularly probative of a witness's character for truthfulness, and is often unduly prejudicial, justifying exclusion under Rule 403. See United States v. Siraj, No 05-Cr-104, 2006 WL 2738952, at *1 (E.D.N.Y. Sept. 25, 2006) (precluding cross-examination of a witness concerning his extramarital affair because it was not "probative of the witness's truthfulness or untruthfulness" and had a "prejudicial impact"); United States v. Ostrer, 422 F. Supp. 93, 98 (S.D.N.Y. 1976) (finding that evidence of an extramarital affair is usually of little value to impeach a witness).

   d. Cross Examination of Clifford Moss Regarding His Transactions with an Estate

Finally, Giovinco argues that the Court erred by "preclude[ing] Defense Counsel from cross-examining cooperating witness Clifford Moss regarding his nefarious transactions surrounding the Estate of Clayton Majette." D's Rule 33 Mem. at 13. Giovinco claims defense counsel should have been permitted to cross examine Moss about how Moss once helped a client and his wife with estate planning before the client's death, about the romantic relationship between Moss and the client's wife, and about financial gifts the client's wife gave to Moss. As the Court held at trial, any impeachment value that this episode might have was

7

"far too speculative, far too remote, [and] far too liable to create confusion to be of value under a [Rule] 403 analysis." Tr. at 388. Accordingly, the Court did not err in barring cross examination on this matter.

III. Weight of the Evidence

In addition to his argument that a new trial is warranted based on the Court's discovery rulings, Giovinco argues that a new trial is warranted because the weight of the evidence was against the verdict. Specifically, Giovinco argues that the Government failed to elicit sufficient evidence of Giovinco's membership in the alleged conspiracy, namely, the Genovese Crime Family. Membership in this conspiracy was necessary to prove the racketeering conspiracy charge against the defendant.[1] Where a defendant's Rule 33 motion is based on the alleged insufficiency of evidence, "the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." United States v. Kozeny, 667 F.3d 122, 139 (2d Cir. 2011).

Drawing all inferences in favor of the Government, it successfully met its burden of demonstrating the defendant's

---

[1] Although the defendant appears to be under the impression that his membership in the Genovese Crime Family was necessary to prove the extortion conspiracy charge, this is not the case. The extortion conspiracy was separate from the racketeering conspiracy, and only required an agreement with others to extort another as defined under 18 U.S.C. § 1951(a).

8

membership in the Genovese Crime Family. First, John Pennisi testified that his conversations with Giovinco led Pennisi to conclude that Giovinco was a member of the group. For example, Pennisi testified that Giovinco represented that he was "a gentleman," a code term meaning a member of an organized crime group, in this case the Genovese Crime Family. See Tr. at 419-21. Second, the Government introduced recordings in which the defendant appeared to reference involvement with the Genovese family. For example, the defendant, in the midst of his extortion of Moss, asked Moss if he wanted to make "him," meaning his co-conspirator Steve Arena, a Genovese Crime Family member, "feel nice." See Government Exh. 316T. Third, other Government witnesses testified to their understanding of Giovinco's association with the Genovese Crime Family. Fyfe, for example, testified that he met the defendant through Arena, and understood them both to be members of the Genovese Crime Family. See Tr. 495-96. This evidence was sufficient for the jury to conclude that Giovinco was a member of the Genovese Crime Family and thus a member of the charged racketeering conspiracy.

IV. Conclusion

In short, neither the Court's evidentiary rulings nor the weight of the evidence justifies granting a new trial. Giovinco's Rule 33 motion is thus denied.

SO ORDERED.

9

Dated:   New York, NY

         February 19, 2020                    JED S. RAKOFF, U.S.D.J.